[No. A111888. First Dist., Div. Four. Mar. 22, 2006.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION
INTER-INSURANCE BUREAU, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and PAUL
HESTEHAUGE, Respondents.

COUNSEL

Wiggins Richard & Romano, Thomas A. Richard and Bradford A. Rosenblatt for Petitioner.

Alister McAlister for Association of California Insurance Companies as Amicus Curiae on behalf of Petitioner.

Neil P. Sullivan, James C. Cuneo and William K. O'Brien for Respondent Workers' Compensation Appeals Board.

Howard Hibbard for Respondent Paul Hestehauge.

**OPINION**

**SEPULVEDA, J.**—The Workers' Compensation Appeals Board (Appeals Board) determined Paul Hestehauge was an employee of homeowners Wayne and Laurie Charkins for purposes of awarding workers' compensation benefits. The Charkinses' insurer, California State Automobile Association Inter-Insurance Bureau (CSAA), filed a petition for writ of review in this court challenging the Appeals Board's determination. Neither Hestehauge nor the Appeals Board answered the petition. We granted the petition and issued a writ of review. We conclude Hestehauge was not an employee of the Charkinses.

## BACKGROUND

The Charkinses hired Hestehauge to paint the living room, dining room, and possibly the kitchen of their home. Their agreement was informal—nothing was put into writing. Hestehauge was visiting from his native Australia, and the Charkinses had met him through a mutual friend. Hestehauge was an experienced house painter, but he did not have a California contractor's license.

On Hestehauge's first day painting at the Charkinses' home, he fell from a ladder placed on top of a scaffold. He suffered serious injuries.

Hestehauge applied for workers' compensation benefits. He also filed a civil suit against the Charkinses. In the workers' compensation proceedings, a workers' compensation judge (WCJ) held a hearing on the threshold issue of whether Hestehauge was an employee of the Charkinses. The WCJ found he was. The Appeals Board granted a petition for reconsideration filed by CSAA, but then took nearly two years to issue a decision. Ultimately, the Appeals Board upheld the WCJ's decision.

## DISCUSSION

■ "The operation of the workers' compensation law is predicated on the existence of an employer-employee relationship." (Hanna, Cal. Law of Employee Injuries and Workers' Comp. (rev. 2d ed. 2005) § 3.01, p. 3-10; see Lab. Code, § 3600, subd. (a).)[1] Whether an employment relationship exists generally turns on the workers' compensation definition of "employee." (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 727 [199 Cal.Rptr. 697] (*In-Home*).) The definition of "employee" is found in part 1, chapter 2, article 2 of the workers' compensation

---

[1] All further statutory references are to the Labor Code, unless otherwise noted.

law (§§ 3350–3371, entitled "Employees"), with the primary inclusive and exclusive provisions contained in sections 3351 and 3352. (*In-Home*, at p. 727; see also *State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1997) 16 Cal.4th 1187, 1203 [69 Cal.Rptr.2d 602, 947 P.2d 795] (*State Farm*) (dis. opn. of Werdegar, J.) [§§ 3351 and 3352 together set out the categories of employment relationship that do and do not bring a worker within the scope of the workers' compensation law].)

Included in the definition of "employee" are persons we will refer to as "residential employees." Residential employees are persons hired by the owner or occupant of a residential dwelling to maintain the dwelling or to provide personal services. (§ 3351, subd. (d).)[2] But the person must work at least 52 hours and earn at least $100 during the 90 days preceding the date of injury to be considered an employee. (§ 3352, subd. (h).)[3] Persons who do not meet this test are excluded from workers' compensation coverage. (See *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 14 [219 Cal.Rptr. 13, 706 P.2d 1146] [§ 3352, subd. (h) excludes from coverage as an employee the plumber or carpenter licensed or not who worked less than 52 hours at the residence]; *Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 235 [130 Cal.Rptr.2d 581] [unlicensed roofer who had worked less than 52 hours and earned less than $100 was not an employee of homeowner].)

The Appeals Board concluded Hestehauge did not have the requisite earnings or hours to qualify as an employee under sections 3351, subdivision (d), and 3352, subdivision (h). That should have been the end of the inquiry.

---

[2] Section 3351 provides: " 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes: [¶] . . . [¶] (d) Except as provided in subdivision (h) of Section 3352, any person employed by the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant."

[3] Section 3352 provides: " 'Employee' excludes . . . : [¶] . . . [¶] (h) Any person defined in subdivision (d) of Section 3351 who was employed by the employer to be held liable for less than 52 hours during the 90 calendar days immediately preceding the date of the injury for injuries, as defined in Section 5411, or during the 90 calendar days immediately preceding the date of the last employment in an occupation exposing the employee to the hazards of the disease or injury for injuries, as defined in Section 5412, or who earned less than one hundred dollars ($100) in wages from the employer during the 90 calendar days immediately preceding the date of the injury for injuries, as defined in Section 5411, or during the 90 calendar days immediately preceding the date of the last employment in an occupation exposing the employee to the hazards of the disease or injury for injuries, as defined in Section 5412."

The Appeals Board, however, at Hestehauge's urging, discovered what it believed was an alternative definition of "employee" in section 3715, subdivision (b). As we shall explain, section 3715 applies only to uninsured employers. It is undisputed the Charkinses were insured under a policy issued by CSAA; therefore, section 3715, subdivision (b) does not apply here.

Section 3715 is part of the scheme for punishing uninsured employers and compensating their injured employees. (See Lab. Code, pt. 1, ch. 4, art. 2, §§ 3710–3732, entitled "Uninsured Employers Fund.") The consequences for an employer who fails to insure are severe. (See Hanna, Cal. Law of Employee Injuries and Workers' Comp., *supra,* § 2.17, pp. 2.38–2.40.) Among the sanctions is the loss of immunity from tort liability. (§ 3706.) Section 3715 permits an employee "whose employer has failed to secure the payment of compensation" to apply for workers' compensation benefits in addition to filing a civil action. (§ 3715, subd. (a).)[4] Under section 3715, the Appeals Board must award benefits just as if the employer had been insured, and the employer must pay the award. (§ 3715, subds. (a) & (b).) If the uninsured employer cannot pay the award, it must be paid out of the state's Uninsured Employers Benefits Trust Fund. (§ 3716, subd. (a).)

The dual remedy provided by section 3715 applies to residential employees, albeit with different hour and dollar criteria than that found in section 3352, subdivision (h). (§ 3715, subd. (b).)[5] "Despite the restrictions on compensation coverage for residential workers in [section 3352, subdivision (h)], a

---

[4] Section 3715, subdivision (a), provides in relevant part: "Any employee, except an employee as defined in subdivision (d) of Section 3351, whose employer has failed to secure the payment of compensation as required by this division, or his or her dependents in case death has ensued, may, in addition to proceeding against his or her employer by civil action in the courts as provided in Section 3706, file his or her application with the appeals board for compensation and the appeals board shall hear and determine the application for compensation in like manner as in other claims and shall make the award to the claimant as he or she would be entitled to receive if the employer had secured the payment of compensation as required, and the employer shall pay the award in the manner and amount fixed thereby or shall furnish to the appeals board a bond, in any amount and with any sureties as the appeals board requires, to pay the employee the award in the manner and amount fixed thereby."

[5] The first paragraph of section 3715, subdivision (b), provides: "Notwithstanding this section or any other provision of this chapter except Section 3708, any person described in subdivision (d) of Section 3351 who is (1) engaged in household domestic service who is employed by one employer for over 52 hours per week, (2) engaged as a part-time gardener in connection with a private dwelling, if the number of hours devoted to the gardening work for any individual regularly exceeds 44 hours per month, or (3) engaged in casual employment where the work contemplated is to be completed in not less than 10 working days, without regard to the number of persons employed, and where the total labor cost of the work is not less than one hundred dollars ($100) (which amount shall not include charges other than for personal services), shall be entitled, in addition to proceeding against his or her employer by civil action in the courts as provided in Section 3706, to file his or her application with the appeals board for compensation. The appeals board shall hear and determine the application for compensation in like manner as in other claims, and shall make the award to the claimant as he or she would be entitled to

residential worker whose employer is uninsured and whose employment meets the criteria of [section 3715, subdivision (b)] may concurrently seek workers' compensation benefits and civil damages from the employer." (1 Cal. Workers' Comp. Practice (Cont.Ed.Bar 4th ed. 2005) § 2.68(3), p. 112.)[6]

The Appeals Board decided section 3715, subdivision (b) created an employment relationship regardless of the presence or absence of insurance. Hestehauge met test (3) in subdivision (b) because he would have earned over $100 if he had completed the painting job. Therefore, according to the Appeals Board, he was the Charkinses' employee.

The genesis of the Appeals Board's (and Hestehauge's) belief that section 3715, subdivision (b) might apply in this case is a mystery. The subdivision, in approximately its present form, was added to section 3715 in 1977 (Stats. 1977, ch. 17, § 24, p. 32), and the facts of the instant case are hardly novel. Yet the Appeals Board's decision does not cite a single instance of section 3715 being invoked as alternate ground for finding an employment relationship in an appellate decision in this state in the nearly 30 years subdivision (b) has been in effect.[7] Section 3715 is not even mentioned in decisions where it might have been relevant if it applied to insured homeowners. (See, e.g., *Cedillo v. Workers' Comp. Appeals Bd., supra*, 106 Cal.App.4th at pp. 234–235; *Furtado v. Schriefer* (1991) 228 Cal.App.3d 1608, 1616–1617 [280 Cal.Rptr. 16]; *Stewart v. Workers' Comp. Appeals Bd.* (1985) 172 Cal.App.3d 351, 355–356 [218 Cal.Rptr. 245]; *In-Home, supra*, 152 Cal.App.3d 720, 741; *Scott v. Workers' Comp. Appeals Bd.* (1981) 122 Cal.App.3d 979, 984–985 [176 Cal.Rptr. 267].)

██ The language of section 3715 and its placement in the part of the workers' compensation law dealing with uninsured employers leave little doubt that its application is limited to uninsured employers. Our conclusion is reinforced by the fact the Legislature requires homeowners' insurance policies to contain workers' compensation coverage (Ins. Code, § 11590), but only for

receive if the person's employer had secured the payment of compensation as required, and the employer shall pay the award in the manner and amount fixed thereby, or shall furnish to the appeals board a bond, in any amount and with any sureties as the appeals board requires, to pay the employee the award in the manner and amount fixed thereby."

[6] One simple explanation for the Legislature's decision to use different, broader criteria to describe residential employment for uninsured employers is that this is more punishment meted out to uninsured employers. Note also that the members of this broader class are also entitled to a presumption of negligence in a civil action against an uninsured employer. (§ 3708.) More fundamentally, however, in the case of an uninsured homeowner, there will not be insurance proceeds to pay either a workers' compensation claim or a civil judgment. Under sections 3715 and 3716, the injured worker will at least have recourse to the Uninsured Employers Benefits Trust Fund if the homeowner cannot otherwise satisfy the claim or judgment.

[7] The Appeals Board cited a handful of its own decisions, but those decisions apparently yielded inconsistent results.

residential employees as defined in subdivision (d) of section 3351. (See *State Farm, supra*, 16 Cal.4th at p. 1197 [§ 3351, subd. (d) incorporates § 3352, subd. (h)].) It would hardly make sense to require insurers to provide coverage for residential employees, but then to leave a large number of residential employees outside the scope of that required coverage.

The Appeals Board's decision includes a lengthy discussion of the history of workers' compensation coverage for residential employees. In particular, the Appeals Board's decision relies on language in section 3715, subdivision (b), which provides: "It is the intent of the Legislature that the amendments to this section by Chapter 17 of the Statutes of 1977, make no change in the law as it applied to those types of employees covered by this subdivision prior to the effective date of Chapter 1263 of the 1975 Regular Session."

Because section 3715, on its face, does not apply to insured employers, a statement of legislative intent regarding that section would appear to have little relevance to the instant case. We will briefly comment on the statement only because the Appeals Board's decision relies so heavily upon it.

According to the Appeals Board, residential employees were covered by the workers' compensation law before 1977 if they were engaged in employment similar to that described in section 3715, subdivision (b). (See former § 3354, repealed by Stats. 1975, ch. 1263, § 6, p. 3316, operative Jan. 1, 1977.) The Appeals Board's theory is that revisions to the workers' compensation law in 1977 were not meant to change the law as it applied to residential employees, and that the Legislature intended to preserve the pre-1977 definition of a residential employee. The Appeals Board believes the Legislature expressed this intent in the part of subdivision (b) of section 3715 quoted above.

Workers' compensation coverage for residential employees has expanded and contracted over the years. (See *State Farm, supra*, 16 Cal.4th at pp. 1204–1207 (dis. opn. of Werdegar, J.); *In-Home, supra*, 152 Cal.App.3d at pp. 735–736.) In 1975, the Legislature amended section 3351 by adding subdivision (d) without any reference to an exclusion for casual labor (minimum hour or dollar requirements). (See Stats. 1975, ch. 1263, § 4, p. 3314.) At the same time the Legislature added Insurance Code section 11590, which required all policies of "comprehensive personal liability insurance" to contain a provision for workers' compensation coverage for employees described in section 3351, subdivision (d). (Stats. 1975, ch. 1263, § 3, p. 3313.) These changes in the law were to take effect January 1, 1977. (*Id.*, § 16, p. 3321.)

There apparently was some hue and cry regarding these provisions, so the Legislature revisited the issue and passed urgency legislation in early 1977 that narrowed the description of residential employee by adding the exclusion found in section 3352, subdivision (h), while at the same time revising the insurance requirements. (Stats. 1977, ch. 17, §§ 13, 17, 18, pp. 29–30.) This is the same legislation that added subdivision (b) to section 3715. (Stats. 1977, ch. 17, § 24, p. 32.)

The problem with the Appeals Board's theory is that at the same time the Legislature was supposedly attempting to preserve the pre-1977 definition of "residential employee" through its statement of legislative intent in section 3715, it was explicitly defining in sections 3351 and 3352 the types of persons employed in residential dwellings who would be considered employees under the workers' compensation law. A second problem with the Appeals Board's theory is that it would render section 3352, subdivision (h) meaningless in cases where there was a dispute over whether the worker met the hour and dollar requirements for residential employment. The 10 working days, $100 test set forth in section 3715, subdivision (b)(3) is a far easier test to meet, particularly because it requires only that it be "contemplated" the work will take 10 days or cost $100 (as opposed to actually worked or earned). Add in the detail that the Appeals Board interprets the test in the disjunctive (10 working days *or* $100), and almost all persons but the teenage babysitter working only a couple of hours potentially would be considered a homeowner's employee.[8] As in Hestehauge's case, there would be no need even to look at section 3352, subdivision (h).

■ The courts have been charged with liberally construing the workers' compensation law with the purpose of extending the benefits of the law to persons injured in the course of their employment. (§ 3202.) "This rule provides a means for resolution of ambiguities in the statutes which affect coverage. It cannot, of course, override a clear statutory expression of exclusion from coverage." (*In-Home, supra,* 152 Cal.App.3d at p. 733.)

■ Hestehauge is excluded from workers' compensation coverage under section 3352, subdivision (h). He was not the Charkinses' employee for workers' compensation purposes.

---

[8] CSAA challenges the Appeals Board's interpretation, noting the statute states the test in the conjunctive ("and"). We need not resolve the question here, but we do note the Appeals Board's analysis might provide an answer to the meaning of the statement of legislative intent. In applying the 10 days, $100 test, the Appeals Board relied on court and administrative decisions interpreting the similar test for "casual" employment found in former section 3354. (See, e.g., *Daniels v. Johnson* (1940) 38 Cal.App.2d 619, 621–622 [101 P.2d 707].) It appears the Legislature might have intended to preserve that body of law for use when section 3715, subdivision (b) was invoked against an uninsured employer.

## DISPOSITION

The Order and Decision After Reconsideration of the Appeals Board is annulled.

Ruvolo, P. J., and Rivera, J., concurred.

The petition of respondent Paul Hestehauge for review by the Supreme Court was denied June 28, 2006, S143060.